**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| David Ramirez, | ) | No. CV 19-199-TUC-LAB |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Commissioner of Social Security Administration, | ) | |
| Defendant. | ) | |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). (Doc. 1, p. 1)

The Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636(c) having received the written consent of both parties. *See* FED.R.CIV.P. 73; (Doc. 12)

The ALJ found that the claimant's drug addiction was material to his determination of disability and denied benefits. The ALJ's decision is supported by substantial evidence and free from legal error. It is affirmed.

PROCEDURAL HISTORY

On May 21, 2015, Ramirez filed an application for disability insurance benefits pursuant to Title II of the Social Security Act. (Tr. 109) On May 26, 2015, he filed an application for supplemental security income pursuant to Title XVI. (Tr. 110) He alleged disability beginning on October 20, 2010, due to depression, anxiety, bipolar disorder, obsessive compulsive disorder, and scoliosis. (Tr. 387)

His applications were denied initially and upon reconsideration. (Tr. 192-199); (Tr. 202-209) Ramirez requested review and appeared with counsel at a hearing before Administrative Law Judge (ALJ) Laura Havens on July 20, 2017. (Tr. 47) At that hearing, the ALJ decided that she needed testimony from a medical expert. (Tr. 79-81) On November 8, 2017, Ramirez appeared with counsel at a second hearing, this time before ALJ Charles Davis. (Tr. 84) The ALJ received testimony from medical expert Joseph Malancharuvil, M.D., vocational expert Robin Scher, and the claimant. (Tr. 84) In his decision, dated April 3, 2018, ALJ Davis found that Ramirez was not eligible for benefits because if he stopped his substance abuse he would be able to work. (Tr. 30) Ramirez appealed, but on February 12, 2019, the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 1-4) Ramirez subsequently filed this action appealing that final decision. (Doc. 1)

Claimant's Work History and Medical History

Ramirez was born in July of 1983. (Tr. 50) He was 34 years old when the ALJ issued his decision in April of 2018. (Tr. 32, 34) He has a GED. (Tr. 50)

Ramirez has worked at a number of jobs, but he struggles to stay employed. (Tr. 51-52, 68, 89) He suffers from depression and anxiety. (Tr. 68) He also has substance abuse problems. (Tr. 87)

In 2017, Ramirez worked for Walmart for almost six months, but when he found out that his ex-girlfriend was with somebody else, he became depressed and "didn't get out of bed for a couple of days." (Tr. 52, 372) In 2016, he worked for Marriott doing room service for three months. (Tr. 53, 366) Before that, in 2015, he worked at a call center for four months. (Tr. 54) In 2010, he worked at Taco Bell for about a year. (Tr. 54) Ramirez's alleged disability onset date is October 20, 2010. (Tr. 387) From 1999 to 2001, he worked for the Pima County Parks and Recreation department as a groundskeeper, but he explained that his father got him the job and helped him to keep it. (Tr. 56, 107, 362)

At the hearing, medical expert Joseph Malancharuvil, M.D., testified that Ramirez has mood disorder aggravated by drug use, personality disorder with anti-social features, and mixed

substance abuse disorder. (Tr. 87) He is moderately limited in his ability to understand, remember, apply information, interact with others, concentrate, and persist or maintain pace. (Tr. 88) His ability to adapt or manage himself is markedly limited. (Tr. 88) Malancharuvil further opined that if Ramirez were to become sober, he would be only mildly limited in his ability to understand, remember or apply information, interact with others, concentrate, and persist or maintain pace. (Tr. 89) His ability to adapt or manage himself would be mildly to moderately limited. (Tr. 89) He could perform moderately complex tasks but could not operate hazardous or fast-moving machinery. (Tr. 89) He should not be in a job that requires constant interaction with the public. (Tr. 89-90)

Vocational expert Robin Scher testified at the hearing that someone with the claimant's age and vocational and educational background, with no exertional limitations but limited to "work that involves up to four to five-step instructions, no workplace hazards such as moving mechanical machinery, [] no fast-paced work [] and occasional interaction with the public, coworkers or supervisors on a superficial work basis," could work in Ramirez's previous job as a groundskeeper. (Tr. 100) (punctuation modified) In the alternative, such a person could work as a marker, DOT #209.587-034, routing clerk, DOT #222.687-022, or day worker, DOT #301.687-014. (Tr. 100-101)

*Medical Record*

In July of 2015, Randal J. Garland, Ph.D., reviewed the medical record for the disability determination service and offered an opinion of Ramirez's mental impairment. (Tr. 109, 110, 124) Garland diagnosed affective disorder, anxiety-related disorder, and substance addiction disorder. (Tr. 121, 137) He then evaluated Ramirez's "B" listing criteria, which gauge the severity of his limitations. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). Garland found Ramirez has "moderate" restrictions of activities of daily living; "moderate" difficulties in maintaining social functioning; "moderate" difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. (Tr. 124) Garland further opined that

the medical evidence did not establish the presence of the "C" criteria, which are an alternative gauge of the extent of his functional limitations. (Tr. 124)

Garland also completed a mental residual functional capacity assessment. (Tr. 122, 138) He concluded that Ramirez's ability to maintain attention and concentration for extended periods is moderately limited. (Tr. 123)  His ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances is moderately limited. *Id*. His ability to complete a normal workday and workweek is moderately limited. (Tr. 123) His ability to interact appropriately with the general public is moderately limited. (Tr. 123) His ability to accept instructions and respond appropriately to criticism from supervisor and his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes is moderately limited. (Tr. 123) His ability to respond appropriately to changes in the work setting is moderately limited. (Tr. 124)

In January of 2016, Eugene Campbell, Ph.D., reviewed the medical record on reconsideration for the disability determination service and offered an opinion of Ramirez's mental impairment. (Tr. 143, 144) Campbell diagnosed affective disorder, anxiety-related disorder, and substance addiction disorder. (Tr. 157, 177)  He then evaluated Ramirez's "B" listing criteria, which gauge the severity of his limitations. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).  Campbell found that Ramirez has "moderate" restrictions of activities of daily living; "moderate" difficulties in maintaining social functioning; "moderate" difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. (Tr. 157-158) Campbell further opined that the medical evidence did not establish the presence of the "C" criteria, which are an alternative gauge of the extent of his functional limitations. (Tr. 158)

Campbell also completed a mental residual functional capacity assessment. (Tr. 159, 179) He concluded that Ramirez's ability to maintain attention and concentration for extended periods is moderately limited. (Tr. 160)  His ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances is moderately limited. *Id*. His ability to complete a normal workday and workweek is moderately limited. (Tr. 160) His ability to interact appropriately with the general public is moderately limited. (Tr. 160) His

ability to accept instructions and respond appropriately to criticism from supervisors and his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes is moderately limited. (Tr. 160) His ability to respond appropriately to changes in the work setting is moderately limited. (Tr. 161)

CLAIM EVALUATION

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id.*

If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two, which requires a determination of whether the claimant has a severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment significantly limits or restricts his or her physical or mental ability to do basic work activities. *Id.* If the ALJ concludes the impairment is not severe, the claim is denied. *Id.*

Upon a finding of severity, the ALJ proceeds to step three, which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so limiting as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity (RFC)[1] to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If yes, then the claim is denied. *Id.* If the claimant cannot perform any past relevant work, then the ALJ must move to the fifth step, which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The ALJ's Findings

At step one of the disability analysis, the ALJ found Ramirez "has engaged in substantial gainful activity since October 20, 2010, the alleged onset date. . . ." (Tr. 18) The ALJ continued the disability analysis, however, probably because Ramirez had not worked since he lost his job at Walmart in 2017. (Tr. 52, 372) At step two, he found Ramirez "has the following severe impairments: mood disorder, personality disorders with anti-social features, [and] substance abuse disorder. . . ." (Tr. 19)

At step three, the ALJ found Ramirez's impairments meet sections 12.04, 12.08, and 12.09 found in the Listing of Impairments, Appendix 1, Subpart P, of 20 C.F.R., Part 404. (Tr. 220) If Ramirez stopped substance abuse, he would still have a severe impairment or combination of impairments, but he no longer would have an impairment or combination of impairments that meets or equals the criteria for any impairment found in the Listing of Impairments. (Tr. 25, 26)

The ALJ then analyzed Ramirez's residual functional capacity (RFC). He found that if Ramirez stopped his substance abuse he "would have the residual functional capacity to perform the full range of work at all exertional levels but with the following nonexertional limitations: The claimant must avoid hazardous moving machinery and other workplace hazards. He can

---

[1] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945.

- 6 -

occasionally interact with the public, with supervisors, and with coworkers on a superficial basis. He can understand and remember 4-5 step instructions. He cannot work at an assembly line pace." (Tr. 26)

At step four, the ALJ found that Ramirez would be able to perform his past relevant work as a groundskeeper if he stopped his substance abuse. (Tr. 29) At step five, the ALJ found, based on the testimony of the vocational expert, that considering his age, education, work experience, and residual functional capacity, Ramirez could work as a marker, routing clerk, or day worker if he stopped his substance abuse. (Tr. 30) The ALJ further found that Ramirez's substance use disorder is a "contributing factor material to the determination of disability because the claimant would not be disabled if he stopped the substance use," and therefore Ramirez is not disabled under the Social Security Act. (Tr. 30)

STANDARD OF REVIEW

To qualify for disability benefits the claimant must demonstrate, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The decision to deny benefits "should be upheld unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept

1  as adequate to support a conclusion." *Id.* It is "more than a mere scintilla but less than a
2  preponderance." *Id.*

3  "Where evidence is susceptible to more than one rational interpretation, the
4  [Commissioner's] decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing
5  court must consider the entire record as a whole and may not affirm simply by isolating a
6  specific quantum of supporting evidence." *Id.*

Discussion: the Drug Addiction and Alcoholism (DAA) Analysis

Ramirez argues that the ALJ erred by finding that his drug addiction is a factor material to his determination of disability. The court finds, to the contrary, that the ALJ's decision is supported by substantial evidence.

The social security disability rules disqualify from receiving benefits a person whose drug addiction or alcoholism would "be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(C); 1382c(a)(3)(J) "Under the implementing regulations, the ALJ must conduct a drug abuse and alcoholism analysis ('DAA Analysis') by determining which of the claimant's disabling limitations would remain if the claimant stopped using drugs or alcohol." *Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007). "If the remaining limitations would still be disabling, then the claimant's drug addiction or alcoholism is not a contributing factor material to his disability." *Id.* "If the remaining limitations would not be disabling, then the claimant's substance abuse is material and benefits must be denied." *Id.* "[T]he claimant bears the burden of proving that drug or alcohol addiction is not a contributing factor material to his disability." *Id.* at 748.

In this case, the ALJ found that Ramirez has severe mental impairments that result in functional limitations so profound that he is unable to work: mood disorder, personality disorder with anti-social features, and substance abuse disorder. (Tr. 19) Some of these limitations result from his mood disorder and personality disorder. Some result from his substance abuse disorder. The ALJ determined that if Ramirez stopped using drugs, the remaining limitations caused by his mood disorder and personality disorder would not be disabling. Accordingly, the

ALJ found that Ramirez's substance abuse is a contributing factor material to his finding of disability and denied benefits.

The ALJ gave "significant weight" to the testimony of the hearing expert Joseph Malancharuvil, M.D. (Tr. 24-25) Malancharuvil "reviewed the entire record that was available up to the date of the hearing," and according to the ALJ, "his opinion is fully supported by that record as well as by the subsequent records submitted after the hearing." (Tr. 25) Malancharuvil testified that Ramirez, when abusing drugs, has moderate limitations in his ability to understand, remember, apply information, interact with others, concentrate, and persist or maintain pace. (Tr. 88) His ability to adapt or manage himself is markedly limited. (Tr. 88) Malancharuvil further opined that if Ramirez were to become sober, he would be only mildly limited in his ability to understand, remember or apply information, interact with others, concentrate, and persist or maintain pace. (Tr. 89) His ability to adapt or manage himself would be mildly to moderately limited. (Tr. 89) He could perform moderately complex tasks but could not operate hazardous or fast-moving machinery. (Tr. 89) He should not be in a job that requires constant interaction with the public. (Tr. 89)

In other words, Malancharuvil believed that Ramirez was unable to work in his present condition, but he would be able to work if he were to become sober. Malancharuvil based his opinion on the medical record, which indicated that Ramirez's mental status is essentially intact, and on Ramirez's chronic inability to keep a job, which Malancharuvil ascribed to episodic drug abuse. (Tr. 92-93)

The ALJ also considered third party statements submitted by Ramirez's parents. (Tr. 27, 465, 482) In one of those statements, Ramirez's parents stated that "[s]ome of [Ramirez's] other symptoms have improved with sobriety and treatment such as his angry outbursts, extreme irritability, and bizarre erratic behavior." (Tr. 465) They explained that Ramirez was making efforts to maintain his sobriety and, apparently as a consequence, he was able to sustain "a part-time job as a housekeeper for a hotel." (Tr. 465)

The ALJ noted that Ramirez had a period of relative sobriety from December 2014 to the Spring of 2016. (Tr. 28) In September 2015, Ramirez reported that "he was doing very well

with sobriety." (Tr. 28); see (Tr. 1067) He erased from his phone the numbers of his friends and dealers. *Id*. He began avoiding areas where his friends congregate, and he instructed his parents to tell callers that he is not at home. *Id*. During this period, he was able to work as a telemarketer. (Tr. 28) He earned $3,144.00 in the third quarter of 2015. (Tr. 28) Ramirez was eventually laid off "due to low demand of calls," not because of his mental health symptoms. (Tr. 28) He updated his resume and "reported he would like to work in the hotel industry." (Tr. 28), *see* (Tr. 1082) He reported "strong relationships with his family, and was independent in activities of daily living." (Tr. 28) In the first quarter of 2016, he earned $3,749.00 at Marriott Hotel Services, Inc. (Tr. 28)

Based on the expert testimony, Ramirez's statements, "his parents' statements, evidence of work activity and job seeking when sober, evidence of benign mental status examinations when sober, and evidence of activities of daily living," the ALJ concluded that if Ramirez remains sober, he has an RFC (residual functional capacity) that enables him to work. (Tr. 27) If he is not sober, however, he is not able to work. Accordingly, the ALJ found that Ramirez's DAA (drug abuse and alcoholism) is material to his finding of disability. This finding is supported by substantial evidence. *See* SSR 13-2p ("To support a finding that DAA is material, we must have evidence in the case record that establishes that a claimant with a co-occurring mental disorder(s) would not be disabled in the absence of DAA."); *see, e.g.*, *Kindrick v. Comm'r of Soc. Sec.*, 2018 WL 3026070, at *6 (E.D. Wash. 2018) ("[T]he ALJ supported the DAA analysis with substantial evidence from Plaintiff's lengthy period of sobriety, including: objective medical evidence; Plaintiff's 'treatment course and daily activities;' and Plaintiff's own testimony, including her ability to work full-time with certain restrictions.").

Ramirez argues to the contrary that the ALJ's DAA analysis is flawed. Specifically he argues that "a finding of non-materiality of DAA is required where the limiting effects of DAA cannot be separated from those of co-occurring mental disorders." (Doc. 16, p. 9) It is not entirely clear why he believes that this is the rule. But even if it were, the ALJ's finding is not error. The ALJ determined from the expert testimony, third party testimony, and the medical record that the limiting effects of Ramirez's DAA *can* be separated from the effects of his co-

- 10 -

occurring mental disorders. For instance, during the period of relative sobriety from December 2014 to the Spring of 2016, Ramirez's symptoms were much reduced, and he was able to work.

Ramirez maintains that his symptoms were not that much better during this period. He notes, for example, that his work as a telemarketer during this period was not significant gainful activity (SGA) under the SSA Rules. (Doc. 16, p. 14) He earned $3,144 in the third quarter of 2015, or $1,048 per month, whereas SGA requires a claimant to earn $1,090 per month. (Doc. 16, p. 14, n. 3) It appears, however, that Ramirez's work fell short of the SGA level not because of the limiting effects of his mental impairments but because he was laid off due to reduced call demand. So the fact that Ramirez's work did not amount to SGA does not significantly contradict the ALJ's analysis.

Ramirez further notes that he was not entirely sober during this period. He reported using heroin during May and October of 2015. (Doc. 16, p. 14) He argues that if his "periods of improvement cannot be tied to periods of sobriety, than his periods of deterioration cannot be tied to periods of drug use." (Doc. 16, p. 14) In other words, Ramirez argues that his periods of improvement and periods of deterioration are due to fluctuations in his underlying mental impairment and not due to fluctuations in his drug use. Therefore, he maintains, this period of relative improvement is not good evidence that he would be able to work if he were to become sober. And he might be right; reasonable minds could differ. That, however, is not the test. It does not matter if the medical record *could* support a finding of non-materiality. At issue is whether the ALJ's finding of materiality is supported by substantial evidence and free from legal error. Here, it is. "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *see, e.g., Chester v. Colvin*, 2015 WL 5793677, at *5 (E.D. Wash., 2015) (The ALJ could rely on the medical expert's opinion that the claimant "would function better if he was sober" even though the same expert qualified his opinion by saying that the claimant's alcohol abuse and other mental impairments were "really intermingled."). Accordingly,

IT IS ORDERED that the final decision of the Commissioner is affirmed. The Clerk of the Court is directed to prepare a judgment and close this case.

DATED this 19th day of November, 2019.

_Leslie A. Bowman_
Leslie A. Bowman
United States Magistrate Judge